# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| CHARLES TALMAGE and BEVERLY TALMAGE, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:07-CV-81 JVB |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's motion for partial summary judgment (DE 26).

**(A) Background**

Plaintiffs Charles and Beverly Talmage were insured by Defendant, Government Employees Insurance Company, on June 27, 2003, when they were involved in a car accident. The driver of the car that rear-ended their car was also insured by Defendant. Plaintiffs settled their claims against the other driver for his policy limits of $30,000 and sought underinsured motorist coverage under their own policy. The policy provides $300,000 in underinsured motorist coverage, but the settlement reduced the amount available to pay Plaintiffs' claim to $270,000.

Mr. Talmage exhibited no immediate physical injures as a consequence of the accident—he sought no medical treatment until several days after the accident—but five days later he suffered a heart attack. He has also experienced symptoms of depression and anxiety

which have prevented him from attending to his legal practice.  Defendant offered $85,000 to settle Plaintiffs' claims.  Plaintiffs made several counter-demands, but the parties could not reach agreement, and on January 16, 2007, Plaintiffs sued Defendant in Elkhart Superior Court.  Defendant removed the action to federal court.

In the complaint, Plaintiffs sought damages for Defendant's alleged breach of the underinsured motorist provisions of the insurance contract.  Plaintiffs also claimed that Defendant's failure to make a good faith effort to settle their claims constituted a tortious breach of the insurance contract, thereby meriting additional compensatory and punitive damages.  However, when Mr. Talmage was asked in Defendant's interrogatories to identify all facts supporting the punitive damage claim, the response was that Plaintiffs were withdrawing their claim for punitive damages.  Discussions between the parties revealed that, although Plaintiffs no longer sought punitive damages, they would continue to pursue their claim for tortious breach of contract.

In its motion for partial summary judgment, Defendant asks the Court to rule that Plaintiffs have withdrawn their claim for punitive damages, that they have no claim for tortious breach of contract, that there is insufficient evidence of bad faith as a matter of law, and that Plaintiffs' recovery is limited to the remaining coverage under the policy, which is $270,000.

**(B)  Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**(C) Discussion**

**(1)** *Punitive Damages and Tortious Breach of Contract*

As Defendant points out in its reply memorandum, Plaintiffs have not contested Defendant's assertion that they have abandoned their claim for punitive damages. Neither have they responded to Defendant's argument that Indiana does not recognize a cause of action for tortious breach of contract. Accordingly, the Court grants Defendant's motion with respect to punitive damages and, having reviewed the authority Defendant cites, agrees that Plaintiffs have no claim for tortious breach of contract.[1] Therefore, are only two issues remain: (1) as a matter of law, is there any evidence that Defendant acted in bad faith? and (2) is Plaintiffs' recovery limited to $270,000?

**(2)** *Evidence of Bad Faith*

Defendant argues that there is no evidence that it acted in bad faith. Defendant directs the Court to Plaintiffs' responses to various discovery requests where the Plaintiffs were asked to provide their evidence of bad faith. Defendant maintains that Plaintiffs' responses, consisting of correspondence between Defendant and Plaintiffs' counsel and documentation related to Plaintiffs' claim, show nothing more than each side's efforts to obtain and review pertinent information and fairly evaluate the claim.

In their response, Plaintiffs assert that there are genuine issues of material fact as to:

- whether Defendant's refusal to pay the policy proceeds was unfounded;

---

[1] Indiana allows actions for tortious breach of the duty of good faith that an insurer owes to its insured as a tort, rather than a contract action. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind.1993). Although Plaintiffs have couched their bad faith claim in terms of a breach of contract action, Defendant does not argue that this is fatal to their claim.

- whether Defendant's delay in making payment was unfounded;

- whether Defendant exercised an unfair advantage to pressure Plaintiffs into a settlement; and

- the amount of compensatory damages the jury should award for Defendant's bad faith failure to settle the claim.

To support these contentions, Plaintiffs have filed Exhibit A, consisting of 954 numbered pages.[2]

Plaintiffs claim that Dr. Mark Lambert's deposition (Ex. A-36) establishes that Mr. Talmage's heart attack probably resulted from the stress of the collision, but do not inform the Court where in these eighty-five pages such evidence is to be found.[3] Defendant is more helpful, directing the Court to pages 61 and 63 of the deposition, where Dr. Lambert opines that the accident may have been a factor in causing Mr. Talmage's heart attack or may not have been.

Plaintiffs next refer to Exhibit A-13 and A-14, stating that in these letters Patrick Casey, Ph.D., documents Mr. Talmage's diagnosis and gives his opinion that Mr. Talmage is unable to work.[4] In this January 2006 letter Dr. Casey states his diagnosis of "Major Depression–Recurrent–Moderate" and observes that some of his symptoms of depression are affecting his ability to work.

Plaintiffs then direct the Court to Dr. Hinchman's report, Exhibit A-11, with the

---

[2]On pages 7–11 of Plaintiffs' response memorandum, they provide a list that divides Exhibit A into 43 sub-exhibits, but do not cite page numbers for the exhibits. Docket Entry 36 appears to match page numbers to exhibit numbers, but the pages do not correspond to the sub-exhibits as they are described in the exhibit list. Consequently, the Court waded through 747 pages of Exhibit A before locating the first sub-exhibit Plaintiffs cite, A-34, Mr. Talmage's deposition.

[3]Plaintiff's Exhibit A-36 includes only the odd numbered pages of Dr. Lambert's deposition. Defendant supplied a complete copy of the deposition as Exhibit 8 to its supplemental statement of material facts (DE 38).

[4]Exhibits A-13 and A-14 are duplicates of a letter from Dr. Casey to Plaintiffs' attorney.

comment that Mr. Talmage was referred to this doctor, a psychiatrist, to help with his diagnosis and medical needs. Exhibit A-11 is a mass of office notes, records, and reports from Dr. Hinchman and Dr. Casey, including a letter from Dr. Hinchman in which he stated that there is no evidence from Mr. Talmage's history or medical record that would suggest that his chronic depression, dating from adolescence, was exacerbated by the accident. Dr. Hinchman went on to say that he did connect Mr. Talmage's anxiety disorder to the collision period. He also stated there was no question in his mind that Mr. Talmage's heart attack was directly connected to the collision.

Plaintiffs next refer to Exhibits A-17 through A-23, which are said to document the closing of Mr. Talmage's law practice and his loss of income. These consist of some 200 pages of correspondence, bank statements and W-2 forms, among other things. Finally, the Plaintiffs instruct the Court to see Exhibits A-5, A-9--14, and A-16–22, almost 300 pages of medical reports and correspondence regarding settlement, from which, Plaintiffs claim, it should have been clear to Defendant that Plaintiffs' damage claims exceeded the limits of the underinsured motorist coverage.

In reply Defendant submitted the affidavit of its claims examiner, Jeanine Forgie, as Exhibit 8 to its supplemental statement of material facts. Ms. Forgie relates that she reviewed the medical records and other documents the Plaintiffs submitted in support of their claim and concluded that there was a significant issue as to whether the car accident caused Mr. Talmage's heart attack and psychological problems. She wrote to Plaintiffs' attorney to arrange for an independent psychiatric evaluation, but before the examination was set up Plaintiffs commenced this action.

6

While Indiana recognizes an insurer's legal duty to deal in good faith with its insureds, a good faith dispute about the amount of insured's claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. To prove bad faith, a plaintiff must establish by clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for its decision. *Freidline v. Shelby Ins. Co.*, 744 N.E.2d 37, 40 (Ind.2002).

Plaintiffs have seemingly dumped their entire case file on the Court with the expectation that the Court will sift through more than 900 pages of largely unexplained correspondence, financial records, medical records, and depositions to find some support for their bad faith claim. They have not provided so much as a time line to support their charge of unfounded delay in making payment. They have made no attempt to pinpoint facts tending to show Defendant took unfair advantage of them. They have not directed the Court to any evidence that Defendant knew it had no legitimate basis for not paying the entire remaining balance of the underinsured motorist coverage. On the contrary, the evidence shows that there is a good faith dispute as to whether Mr. Talmage's heart attack, psychological problems, and inability to work were caused by the accident for which Plaintiffs are demanding $270,000 in underinsured motorist coverage.

Because Plaintiffs have failed to come forward with any evidence of bad faith, the Court grants summary judgment on this issue as well.

**(3)** *Ceiling on Recovery*

The Court turns to Defendant's request for summary judgment that if it is determined that Defendant breached its insurance contract, Plaintiffs' recovery may not exceed $270,000, the net remaining coverage under their policy. Plaintiffs counter that $270,000 is not the limit of their

7

recovery because they are entitled to prejudgment interest. A ruling on this issue is premature. The evidence received at trial may affect the Court's determination. Accordingly, the Defendant's motion for summary judgment that $270,000 is the most the Plaintiffs can recover is denied.

**(D) Conclusion**

For the foregoing reasons, Defendant's motion for partial summary judgment (DE 26) is GRANTED in part and DENIED in part. Summary judgment is GRANTED on the issues of punitive damages, the existence of a claim for tortious breach of contract, and the Defendant's bad faith. Summary judgment is DENIED as to a ceiling of $270,000 on Plaintiffs' recovery.

SO ORDERED on March 11, 2009.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge  
Hammond Division